# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CARL ZEISS VISION, INC. | : | |
| Plaintiff, | : | |
| v. | : | **C.A. No. 11513-VCS** |
| REFAC HOLDINGS, INC. and U.S. VISION, INC., | : | |
| Defendants. | : | |
| REFAC HOLDINGS, INC. and U.S. VISION, INC., | : | |
| Counterclaim Plaintiffs, | : | |
| v. | : | |
| CARL ZEISS VISION, INC., | : | |
| Counterclaim Defendant. | : | |

## MEMORANDUM OPINION

Date Submitted:  June 14, 2017
Date Decided:  August 24, 2017

Gregory E. Stuhlman, Esquire of Greenberg Traurig, LLP, Wilmington, Delaware and Jeff E. Scott, Esquire and Valerie W. Ho, Esquire of Greenberg Traurig, LLP, Los Angeles, California, Attorneys for Plaintiff and Counterclaim Defendant.

William R. Denney, Esquire, Brian C. Ralston, Esquire, Andrew H. Sauder, Esquire and Jordan A. Braunsberg, Esquire of Potter Anderson & Corroon LLP and Jon M. Talotta, Esquire of Hogan Lovells US LLP, McLean, Virginia, Attorneys for Defendants and Counterclaim Plaintiffs.

**SLIGHTS, Vice Chancellor**

Delaware courts do not take lightly applications to vacate arbitration awards. Indeed, the standard of judicial review with respect to such applications is among "the narrowest . . . in all of American jurisprudence."[1]  Acknowledging the nearly vertical mountain it must climb, Defendants/Counterclaim Plaintiffs, REFAC Holdings, Inc. and U.S. Vision, Inc. (collectively "USV"), nevertheless move the Court to vacate an arbitration award that construed a supply agreement between USV and Plaintiff/Counterclaim Defendant, Carl Zeiss Vision, Inc. ("Zeiss"), in a manner that supported Zeiss' claim that USV had wrongfully terminated the agreement. According to USV, the arbitration panel "eviscerate[d] the essential term" of the agreement *sua sponte* and then "permit[ted] the agreement to remain in effect after gutting that term."[2]  This grave error, according to USV, was the product of an arbitration panel that "abdicated its duties" and thereby "acted outside the scope of its authority."[3]

USV's motion would have the court turn the applicable standard of review on its head.  Indeed, although it has not expressly advocated for *de novo* review, the tone of its motion suggests that the Court should construe the terms of the operative

---

[1] *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014).

[2] Opening Br. in Supp. of Defs. and Countercl. Pls.' Mot. to Vacate Arbitral Award ("Opening Br.") 1.

[3] *Id.*

contract anew without any regard for the fact that a carefully selected, experienced arbitration panel has already undertaken that exercise. In two words, USV seeks a "do over." That relief is rarely justified. It is not justified here. The motion to vacate is DENIED.

## I. BACKGROUND

The parties have submitted rather extensive exhibits from the arbitration proceeding, including sworn testimony. I have drawn the facts from that record to the extent necessary to determine whether the arbitration award "can be rationally derived" from the contract the arbitrators were asked to construe and otherwise from the evidence.[4]

---

[4] *Brennan v. CIGNA Corp.*, F. App'x 132, 136–37 (3d Cir. 2008) (If "an arbitration award rationally can be derived from either the agreement of the parties or the parties' submission to the arbitrator, it will be enforced."). I note that the procedural posture of the motion *sub judice* is not entirely clear. The motion is styled as a "Motion to Vacate Arbitral Award." It does not purport to invoke any of this Court's rules of procedure as the means by which USV seeks this case dispositive relief. *Cf. Beebe Med. Ctr., Inc. v. InSight Health Servs. Corp.*, 751 A.2d 426, 431 (Del. Ch. 1999) (observing that the filing of cross motions for summary judgment is the "common [method] for this court to determine whether to vacate or confirm an arbitration award."). As noted, the parties have submitted extensive record evidence. If I had determined that material factual disputes were revealed in that record, the murky procedural context might confound the analysis here. Since I have found that no such material disputes of fact exist, I am satisfied that I may finally adjudicate this motion as styled rather than kick the can down the road in search of more procedural clarity.

## A. The Parties

Zeiss manufacturers ophthalmic lenses used in eyeglasses.  USV operates as a retailer of ophthalmic products in the United States.  Zeiss has supplied ophthalmic lenses to USV for the past 16 years.

## B. The 2011 Supply Agreement

The contract at the heart of the parties' dispute is the Amended and Restated Supply Agreement dated December 28, 2011 (the "Agreement").  Pursuant to the Agreement, USV committed to purchase 95% of its lenses from Zeiss, subject to certain identified conditions.  In exchange, Zeiss committed to supply the lenses ordered by USV and to extend $20 million of unsecured financing to USV at below-market interest.  The term of the Agreement is ten years.  It is governed by Delaware law and requires the parties to submit disputes relating to the Agreement to binding arbitration.

The conditions to USV's purchase obligation are set forth in Paragraph 3.2(a) of the Agreement.  Specifically, USV need only purchase 95% of its lenses from Zeiss if: (1) Zeiss makes the products required by USV in the quantities USV requires; (2) Zeiss's products comply with industry quality standards; and (3) "CZV

[Zeiss] offers USV competitive pricing with respect to the CZV Lenses."[5] Paragraph 3.5 confirms that the purchase prices of Zeiss lenses are set forth on an exhibit attached to the Agreement and that "the purchase price to be charged USV-Refac for the various CZV Lenses. . . shall be no higher than the prices charged by CZV to any other customer making an equivalent volume of purchases of CZV Lenses."[6]  The parties have referred to this as a "most favored nation" or "MFN" provision.

The present dispute arises under the "competitive pricing" provision in Section 3.2(a)(ii).  USV maintains that it may avoid the 95% purchase requirement in the Agreement if it is able to obtain more competitive (*i.e.*, better) pricing from another lens supplier.  Zeiss interprets the competitive pricing provision as allowing USV to purchase its lenses elsewhere only if Zeiss does not provide pricing to USV that is competitive with what it offers other similarly situated customers, as further addressed in the Agreement's MFN provision.

---

[5] Transmittal Aff. of Gregory E. Stuhlman in Supp. of Pl. and Countercl. Def. Carl Zeiss Vision, Inc.'s Opp'n to Defs. and Countercl. Pls.' Mot. to Vacate Arbitral Award Ex. 55 ("Agreement") ¶ 3.2(a).  Zeiss is referred to in the Agreement as CZV.

[6] Agreement ¶ 3.5.

4

## C. The Arbitration

USV filed a Demand for Arbitration with the American Arbitration Association on August 28, 2015 (the "Demand").[7] The Demand sought a declaration that the Agreement (specifically Paragraph 3.2(a)(ii)) authorized USV to engage in price checks of the market to determine if Zeiss was offering competitive prices and, if not, to purchase some or all of its lenses from the suppliers offering the best price. USV identified in its Demand that one of Zeiss's biggest competitors, Essilor Laboratories of America ("Essilor"), was, in fact, able to offer more competitive pricing than Zeiss and it alleged that it was therefore entitled to purchase lenses from Essilor under the Agreement.[8]

A panel of three arbitrators (the "Panel") was selected as called for in the Agreement. As the parties moved closer to the arbitration hearing, the Panel asked USV to state definitively the relief it would be seeking at the hearing. USV responded by expanding, or refining, the relief it was seeking to include declarations that: (1) when it compared Zeiss's pricing with that of other manufacturers it could do so on a "portfolio" or "product line" basis; (2) if USV buys lenses from another

---

[7] Transmittal Aff. of Andrew H. Sauder in Supp. of Opening Br. in Supp. of Defs. and Countercl. Pls.' Mot. to Vacate Arbitral Award ("Sauder Transmittal Aff.") Ex. F.

[8] After filing its Demand, USV began to purchase lenses from Essilor. This prompted Zeiss to initiate an action in this Court for, *inter alia*, injunctive relief. The parties ultimately agreed to stay the litigation in this Court in favor of arbitration.

5

supplier offering lower prices, USV would have ten days to notify Zeiss when that supplier's prices increase; (3) if Zeiss offers to lower its pricing after USV moves to another supplier in order to return to "competitive pricing," then USV will have three months to transition its purchasing back to Zeiss; (4) the pricing for Essilor's product portfolio is more competitive than the pricing for Zeiss's product portfolio; (5) the pricing of certain Essilor products is more competitive than the pricing of certain Zeiss products; and (6) USV could purchase any amount of lenses from Essilor until Zeiss matches Essilor's pricing. Importantly, USV did not seek rescission of the Agreement or damages for breach of contract.

The hearing lasted seven days. As one would expect after a seven-day hearing, the evidentiary record was extensive. The parties offered closing arguments at the conclusion of the hearing and, in doing so, addressed the specific questions posed to them by the Panel. By agreement, the parties then submitted post-hearing briefs. It was in this submission that USV argued for the first time that the Agreement should be rescinded if the Panel concluded that the competitive pricing provision was ambiguous.[9] Zeiss objected. Among other grounds, it stressed that the Agreement could not be rescinded because USV had already taken and spent

---

[9] USV's request for rescission at the close of the arbitration hearing is curious given the extensive extrinsic evidence that both parties developed and then presented to the panel during the hearing to assist in the construction of the Agreement should the panel find the Agreement was ambiguous.

6

most the $20 million that it had loaned to USV as consideration for the Agreement. USV responded to Zeiss's objection and the issue was joined for decision by the Panel along with USV's other claims for relief.

The Panel issued its unanimous decision denying all of USV's requested relief on July 14, 2016. With respect to USV's request for a declaration relating to its interpretation of the competitive pricing provision, the Panel found that while "USV intended that the provisions set forth market check language," "the evidence is undisputed that Labeeuw [a USV negotiator of the Agreement] never intended, or understood, that the new language was market check language, and there is no evidence (other than by implication from the execution of the [Agreement] by Zeiss) that anyone employed by Zeiss, or representing Zeiss, intended or understood before the [Agreement] was executed that the [competitive pricing] provisions set forth market check language."[10] The Panel also determined that "*even if* one were to conclude Zeiss accepted USV's proposed language, that does not indicate any agreement by Zeiss or, for that matter, USV, to any mechanism for implementation of any market check right. This is only illustrative of the absence of terms supporting the forms of relief requested by USV."[11]

---

[10] Sauder Transmittal Aff. Ex. M ("Award") 6.

[11] *Id.*

7

After completing its construction of the relevant language in the Agreement, the Panel concluded that USV was not authorized by the Agreement to engage in a market check to determine if Zeiss was offering competitive pricing. It further concluded, under the Uniform Commercial Code ("UCC") and Delaware case law, that it had no reasonably certain basis to fashion an appropriate remedy if it were to agree that USV's construction was reasonable since the Agreement was silent as to how a market check would work under the MFN clause.[12] It expressly declined to "rewrite" the parties' Agreement.[13]

The Panel then addressed USV's belated request for rescission. After acknowledging USV's argument that it "would not have entered into the [Agreement] 'unless it could exclude lenses that were not competitively priced," the Panel determined that USV had failed to cite any evidence in support of this statement and noted that the Panel's own assessment of the evidence found no support for this position either.[14]

**D. Procedural Posture**

This matter first came to the Court on Zeiss's Verified Complaint for Specific Performance, filed on September 16, 2015, in which Zeiss sought an order declaring

---

[12] *Id.* at 7.

[13] *Id.* at 6–7.

[14] *Id*. at 8.

that the Agreement precluded USV from purchasing lenses from Zeiss competitors, including Essilor. Zeiss sought a temporary restraining order to that same effect. On October 26, 2016, the parties stipulated that this action should be stayed in favor of arbitration that would address the "merits of their dispute relating to the [] Agreement."[15] The arbitration hearing was held May 18–26, 2016. The Panel issued its award on July 14, 2016. USV filed its Motion to Vacate Arbitral Award on October 12, 2016.

USV argues that the Panel "abdicated its duties and ignored basic tenets of UCC law by declaring the Competitive Pricing Exceptions [in the Agreement] unenforceable and then compounded the problems it created by refusing to terminate the contract as the UCC requires."[16] According to USV, the Panel "refused to interpret" the Agreement as requested by the parties and, instead, resolved issues that it raised *sua sponte* at the conclusion of the arbitration hearing.[17] By proceeding in this manner, the Panel "acted outside the scope of its authority, [] issued an award that did not resolve the disputes submitted to arbitration, [] manifestly disregarded governing law, [] gutted USV's bargained-for contractual protections, and []

---

[15] Stipulation (DI 36).

[16] Opening Br. 2.

[17] *Id.*

9

ultimately decided the parties' disputes based on the Panel members' own idiosyncratic views of justice."[18]

Zeiss, of course, emphasizes the extraordinarily narrow standard of review within which the Court must operate—a standard that USV has not come close to meeting here. It also challenges USV's characterization of the Panel's award. According to Zeiss, USV asked the Panel to declare that the Agreement allowed USV to seek out competitively priced lenses in the marketplace and to acquire such lenses if Zeiss did not match the pricing. The Panel considered USV's proffered construction of the Agreement in this regard and rejected it. Accordingly, dissatisfied with the Panel's award, USV cannot now be heard to argue that the Panel somehow acted outside of the scope of its authority when it decided precisely what USV asked it to decide.

## II. ANALYSIS

Although the parties have cited to both Delaware and federal authority with respect to the standard of review, they appear to agree that the Federal Arbitration Act ("FAA") applies here.[19] This consensus regarding the standard of review is well placed given that the Agreement does not expressly reference the Delaware Uniform

---

[18] *Id.* at 2–3.

[19] 9 U.S.C. §§ 1–16.

Arbitration Act ("DUAA") or otherwise reflect the parties' "desire to have [the DUAA] apply to their agreement."[20]  With regard to the appropriate deference to which an arbitrator's award is entitled, however, the decision to apply the FAA over the DUAA (or vice versa) is of limited moment since precedential decisions applying both statutes require reviewing courts to give practically the highest degree of deference, short of "untouchable,"[21] recognized in the law to an arbitrator's award.[22] Indeed, to overturn an award, the court must be satisfied that "there [is] absolutely no support at all in the record justifying the arbitrator's determinations."[23]

---

[20] 10 *Del. C.* §§ 5702(a)(c) (unless the parties expressly agree that the DUAA shall apply to their agreement any motions to vacate or enforce an arbitrator's award shall be decided "in conformity with the [FAA]").

[21] As any trial judge will attest, the "untouchable" standard of review does not exist.

[22] *Compare SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014) (noting the DUAA "tracks" the FAA with regard to standard of review and further observing that the "review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence"); *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) ("There is a strong preference under the [FAA] in favor of enforcing arbitration awards."); *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers*, 817 F.3d 857, 861 (3d Cir. 2016) (noting that arbitration awards must be reviewed under an "extremely deferential standard, the application of which is generally to affirm easily the arbitration award").

[23] *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995).

When considering "whether the arbitrator exceeded its authority," the court must "resolve all doubts in favor of the arbitrator."[24] "Even if the arbitrator did not state the grounds for a grant or denial of relief, the grant or denial of relief will be deemed to be within the scope of the arbitrator's authority [i]f grounds for the award can be inferred from the facts of the case."[25] This court will not "pass an independent judgment on the evidence or applicable law," and "[i]f *any grounds* for the award can be inferred from the facts on the record, the Court *must* presume that the arbitrator did not exceed his authority and the award must be upheld."[26]

## A. The Award does not Disregard Controlling Law

USV contends that the Panel disregarded controlling law when it determined that the Supply Agreement was enforceable even after it struck, or at least refused to enforce, an essential term of the contract (the competitive pricing provision). To demonstrate that an arbitral award was rendered in disregard of the law such that the award should be vacated, the party seeking to vacate the award must demonstrate

---

[24] *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 732 (Del. Ch. 2008).

[25] *World-Win Mktg., Inc. v. Ganley Mgmt. Co.*, 2009 WL 2534874 (Del. Ch. Aug. 18, 2009) (internal quotation marks omitted).

[26] *TD Ameritrade*, 953 A.2d at 733 (citation omitted) (emphasis added). *See also Neuronetics, Inc. v. Fuzzi*, 552 F. App'x 134, 135 (3d Cir. 2014) ("We will vacate an award only under the exceedingly narrow circumstances listed in 9 U.S.C. § 10(a) or to correct a manifest disregard of the law.") (citations omitted)

that "the arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it."[27] This showing must be "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law."[28] USV has not come close to meeting this burden.

The Panel concluded that the competitive pricing language in the Agreement could not reasonably be construed on its face to allow USV to stop buying lenses from Zeiss if it found better pricing elsewhere.[29] In reviewing the plain language of the Agreement, the Panel reasonably found that the phrase "competitive pricing with respect to the CZV Lenses" in Paragraph 3.2(a)(ii) could be a reference to the MFN pricing structure described in Paragraph 3.5 (pricing competitive with Zeiss's other customers), as Zeiss argued, or the phrase could mean competitive pricing as

---

[27] *Paul Green Sch. Of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 177 (3d Cir. 2010).

[28] *TD Ameritrade*, 953 A.2d at 732–33. *See also RBC Capital Mkts. Corp. v. Thomas Weisel P'rs, LLC*, 2010 WL 681669, at *8 (Del. Ch. Feb. 25, 2010) ("as long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision." (alteration in original)).

[29] Award 5, Ex. A ("taking into consideration the MFN provisions of section 3.5, the Panel finds the CP provisions ambiguous, and susceptible of different meanings, regarding whether these provisions set forth market check language.").

compared to other lens manufacturers, as USV argued.[30]  Because the parties elected

to leave the phrase "competitive pricing" undefined, the Panel did its best to construe

the term first by reference to the language within the four corners of the Agreement,

and then, when that analysis did not yield a clear construction, by reference to

extrinsic evidence.[31]  This hardly reveals that the Panel "flouted the governing law";

indeed, the analysis was entirely consistent with settled Delaware law in the area of

---

[30]  Specifically, the Panel determined:

> As previously set forth, the language of the CP [competitive pricing] provisions was never negotiated between the parties.  Other than its appearance in the final draft of the SA [supply agreement], there is no evidence the language was addressed between the parties before execution of the SA, either in any conversation, or in any writing.  The course of dealing between the parties after execution of the SA also provides no guidance, as the CP provisions were never acted on or invoked until years later when the Essilor offer was presented to Zeiss.  Other than the language of the CP provisions, and that Zeiss rejected the previous language that would permit US to continually shop Zeiss prices for any Zeiss lenses, there is no evidence that provides guidance as to the meaning, or intent, or operation of the CP provisions.

Award, at 6–7.

[31] As the Panel observed, Paragraph 3.2(a)(ii) of the Agreement states "competitive pricing *with respect to the CZV Lenses*"; it does not state "competitive pricing *with respect to the lens market*" or "competitive pricing *with respect to other lens manufacturers*," all language that actually appeared in prior drafts of the Agreement that Zeiss rejected. Agreement ¶ 3.2(a)(ii).  When the parties referred to competitive pricing elsewhere in the Agreement, they always took care to identify precisely what prices will be compared.  *See id.* at ¶ 5.2(a) (. . . to timely accommodate USV's customer orders at prices competitive with other available wholesale optical laboratories."); ¶ 5.2(b) (". . . to timely accommodate USV's customer orders at prices that are relatively competitive with (but not necessarily the lowest price available) other available wholesale optical laboratories.").  In this regard, the term "competitive pricing" in Paragraph 3.2(a)(ii) stands alone in its failure to provide context and for that reason alone, as the Panel determined, the term is ambiguous.

contract construction.[32] As the party seeking declaratory relief, USV had the burden to prove that Section 3.2(a)(ii) meant what USV claims it meant.[33] USV did not meet its burden. Consequently, the Panel did not adopt USV's proposed interpretation.

Having determined that USV's proffered construction of the Agreement was not reasonable, the Panel was under no obligation to declare the entire agreement unenforceable. According to USV, the Panel's refusal to accept USV's proffered construction of the competitive pricing language left the Supply Agreement without an essential "quantity" term. I note that USV raised this argument to the Panel for the first time *after* the hearing had concluded. Notwithstanding that the argument is of post-hearing vintage, and therefore arguably not properly joined in the arbitration proceedings, USV's attempt to assail the Panel's treatment of this argument fails in any event because it misconstrues the Panel's decision and applicable Delaware law.[34]

---

[32] *Paul Green Sch. Of Rock Music Franchising*, 389 F. App'x at 177. *See also GMG Capital Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 783 (Del. 2012) ("[W]here reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence.")

[33] *Zimmerman v. Crothall*, 62 A.3d 676, 691 (Del. Ch. 2013); *Lillis v. AT&T Corp.*, 2008 WL 2811153, at *4 (Del. Ch. July 21, 2008).

[34] USV's demand for rescission was likely received with some surprise given that USV had already received and likely spent the $20 million loan that Zeiss had extended to it (on highly favorable terms) in connection with, and as partial consideration for, the Agreement. *See Stenta v. Gen. Motors Corp.*, 2009 WL 1509299, at *10 (Del. Super. May 29, 2009),

In essence, what USV asked the Panel to do after the hearing was to rescind the Agreement.[35] Yet it can hardly be said that the Panel "flouted the applicable law" when it concluded that USV did not meet its burden of demonstrating that the "extreme remedy" of rescission was appropriate here.[36] Specifically, as the Panel observed, USV "cite[d] no evidence" to support its claim that the competitive pricing term was material to its decision to enter into the Agreement and "*the Panel finds the evidence does not so prove*."[37] Indeed, looking beyond the competitive pricing language, the Panel was reasonable in its perception that Paragraph 3.2(a) still

---

*aff'd*, 7 A.3d 485 (Del. 2010) (rejecting rescission claim where the circumstances present at the time the claim was adjudicated made it "impossible for the Court to 'unscramble the eggs'").

[35] Opening Br. 14 ("The Panel was clearly aware of the relevant principals at issue under the UCC, but improperly refused to apply them to invalidate the whole agreement when it invalidated an essential element of the quantity term, the Competitive Pricing Exceptions.").

[36] *Liberto v. Bensinger*, 1999 WL 1313662, at *5 (Del. Ch. Dec. 28, 1999) (noting that the court must have a "high degree of confidence" in the propriety of imposing the "extreme remedy" of rescission). *See also Neuronetics, Inc.*, 552 F. App'x at 135 ("We will vacate an award only under the exceedingly narrow circumstances listed in 9 U.S.C. § 10(a) or to correct a manifest disregard of the law.").

[37] Award, at 8 (emphasis added). *See Home Ins. Co. v. Honaker*, 1983 WL 102619, at *1 (Del. Ch. Nov. 2, 1983) (holding that a party's unilateral mistake as to the meaning of a term of the contract will justify rescission only when the term is material); *Asten, Inc. v. Wangner Sys. Corp.*, 1999 WL 803965, at *4 (Del. Ch. Sept. 23, 1999) (same). *See also Hildreth v. Castle Dental Ctrs., Inc.*, 939 A.2d 1281, 1283–84 (Del. 2007) (stating that under Delaware law, "[a]n invalid term of an otherwise valid contract, if severable, will not defeat the contract"); *Tracey v. Franklin*, 67 A.2d 56, 61 (Del. 1949) (stating that under Delaware law, "[w]hether or not the terms of a contract are severable is purely a question of the intent of the parties").

16

adequately addresses pricing in that it contains a definite quantity term that provides a formula for determining USV's purchase obligations: Paragraph 3.2(a) provides that Zeiss "shall be the preferred supplier of ophthalmic lenses"; "USV-Refac shall order from [Zeiss] substantially all of the ophthalmic lenses required by USV" to the extent that Zeiss makes the lenses and they comply with industry quality standards; and "substantially all of the ophthalmic lenses required by USC-Refac shall mean at least 95% of the aggregate number of all ophthalmic lenses sold by USV-Refac in connection with its sale of ophthalmic eyeglasses through the USV Stores during any consecutive 3-month period of the Term."[38] Under these circumstances, there is no basis to conclude that the Panel manifestly disregarded the applicable law when it declined USV's eleventh-hour invitation to rescind the Agreement.[39]

---

[38] Agreement, at ¶ 3.2(a); Award at 8.

[39] Contrary to USV's position here, the UCC does not dictate a different result. As USV points out, "UCC Section 2-204 'reflects the common law principle that a meeting of the minds on all essential contract terms is critical for contractual formation.'" Opening Br. 14 (citing *Hardwire, LLC v. Zero Int'l, Inc.*, 2014 WL 5144610, at *9 (D. Del. Oct. 14, 2014)). And, to be sure, "quantity" is an essential term. *See* 2 E. Farnsworth, *Farnsworth on Contracts* § 6.7, at 141 (2d ed. 1990) (noting that the UCC "significantly relaxes the requirement that the memorandum state all the essential terms by insisting only that it state the quantity of goods"). But, as noted, the Panel did not commit manifest error in determining that, even without the competitive pricing provision, the Agreement still more than adequately addressed the quantity of lenses USV was to purchase. There was no essential term missing here even after the Panel declined to construe the competitive pricing provision according to USV's construction of that term.

## B. The Award was not Irrational

An arbitrator "subjects his award to judicial vacatur under [FAA] § 10(a)(4) when he decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreements and submissions, or issues an award that is so completely irrational that it lacks support altogether. . . . [W]hen the arbitrator 'strays from interpretation and application of the agreement' and effectively 'dispenses his own brand of industrial justice' he exceeds his powers and his award will be unenforceable.'"[40] USV argues that the Panel abdicated its responsibility to interpret the Agreement and instead "dispensed [its] own brand of industrial justice" by finding that the competitive pricing provision was unenforceable and, more importantly, by improperly refusing to find that the entire Agreement was unenforceable based on the failure of the competitive pricing provision. This argument is simply a recycling of the argument that the Panel ignored controlling law. As before, I reject it as an unfounded characterization of the Panel's decision and an unsupported interpretation of Delaware law.

## C. The Panel Addressed All Issues it was Asked to Decide

USV maintains that "[t]he Panel's decision that 'the [competitive pricing] provisions lack[ed] sufficient definiteness, specificity, and mechanisms to be

---

[40] *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219–20 (3d Cir. 2012), as amended (Apr. 4, 2012), *aff'd*, 133 S. Ct. 2064 (2013).

enforceable by declaratory relief' (Award, p. 7) resulted in an imperfect execution of the Panel's powers such that 'a mutual, final, and definite award upon the subject was not made.'"[41]  According to USV, the Panel neglected to determine whether the competitive pricing provision could be enforceable by an action for damages (as opposed to the claim for declaratory relief that USV actually brought) and "whether the Competitive Pricing Exceptions related to the prices of comparable ophthalmic lenses offered by other lens suppliers (as USV argued), or whether they were simply a re-iteration of the MFN clause of Section 3.5 (as [Zeiss] argued)."[42]  A review of the Award reveals that the Panel decided every issue that was submitted by USV and denied USV's requests for declaratory relief.

As an initial matter, it cannot be ignored that neither party submitted a breach of contract claim to the Panel.  The claims were plainly limited to prayers for declaratory relief.  Moreover, the fact that a breach of contract claim will not lie with USV's proffered construction of the Agreement is implicit in the Panel's Award.  The Panel determined that the competitive pricing provision was not enforceable as

---

[41] Opening Br. 25 (citing 9 U.S.C. § 10(a)(1)(4), *Certain Underwriters at Lloyd's London et al. v. BCS Ins. Co*., 239 F. Supp.2d 812, 816 (N.D. Ill. 2003)).  Title 9 of the U.S. Code, Section 10(a)(1)(4) provides that an arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

[42] Opening Br. 26.

19

drafted. Any breach of contract claim that USV might pursue based on an alleged breach of the competitive pricing provision, therefore, would not be viable.

The same analysis applies to USV's argument that the Panel did not decide whether the competitive pricing provision referred to the MFN pricing provision in Section 3.5 of the Agreement. USV did not seek a decision from the Panel on that issue. Its argument that the Panel should now be faulted for not deciding the issue, therefore, is, at best, impertinent.

The Panel's Award was "mutual" and "final" in that it "resolved the entire dispute (to the extent arbitrable) that had been submitted to them."[43] USV's argument to the contrary is unfounded.

## III. CONCLUSION

USV has failed to state any grounds that justify the extraordinary relief of vacating an arbitration award. Its Motion to Vacate Arbitral Award, therefore, must be DENIED. The parties shall confer and submit a proposed final order addressing the Motion to Vacate and the final disposition of this case within ten (10) days.

---

[43] *IDS Life Ins. Co. v. Royal Alliance Assoc., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001).